Present:  All the Justices

REBECCA A. STANLEY, ET AL.

v.  Record No. 991958    OPINION BY JUSTICE BARBARA MILANO KEENAN
                                       June 9, 2000
DONALD WAYNE WEBBER, ET AL.


            FROM THE CIRCUIT COURT OF ROANOKE COUNTY
                  Diane McQ. Strickland, Judge


     In this appeal of a judgment entered in favor of the

plaintiffs in a malicious prosecution action, we consider

whether the evidence was sufficient to support the jury verdict.

     Donald Wayne Webber and his son, Todd Anthony Webber

(collectively, the Webbers), each filed a motion for judgment

against S & A Restaurant Corporation, doing business as Steak &

Ale (Steak & Ale), and Rebecca Ann Stanley, the manager of a

Steak & Ale restaurant located in Roanoke (the restaurant).  The

Webbers alleged that Stanley, acting on behalf of Steak & Ale,

maliciously and falsely procured felony warrants against them,

charging them with grand larceny of a commercial oven owned by

the restaurant.

     We will state the evidence presented at trial in the light

most favorable to the Webbers, the parties who prevailed in the

trial court.  Hudson v. Lanier, 255 Va. 330, 331, 497 S.E.2d

471, 472 (1998); Horton v. Horton, 254 Va. 111, 115, 487 S.E.2d

200, 203 (1997).  The Webbers operate a business in Roanoke

known as Security Food Equipment Services (Security Equipment), which repairs commercial food service equipment for restaurants and institutions. Security Equipment had repaired food service equipment at the restaurant on numerous occasions over a period of between 10 and 15 years.

In June 1995, Stanley, acting on behalf of Steak & Ale, placed a telephone call to Security Equipment's office and reported that one of the restaurant's convection ovens was not working. Todd Webber went to the restaurant and, after examining the oven, estimated that the parts required to repair the oven would cost about $350. Stanley told him that the Steak & Ale "home office" did not want to pay that much to repair the oven because it was to be replaced soon. Todd Webber offered to pay for the parts and repair the oven without charge if Steak & Ale would agree to give the oven to the Webbers in "30 days or so, whatever" when the restaurant received the new oven. Stanley accepted Todd Webber's offer, and the Webbers repaired the oven the next day.

During the remaining months of 1995, the Webbers contacted Stanley "four to five" times and requested delivery of the oven they had repaired. Stanley repeatedly told them that the new oven was still "on order." In January 1996, when the Webbers confronted Stanley at the restaurant and requested either payment for the repair work or delivery of the oven, Stanley

2

again told them that the new oven had not yet arrived. During an ensuing argument, both Stanley and Donald Webber summoned the police.

Officer Michael W. Dull of the Roanoke Police Department went to the restaurant and told the Webbers that the dispute was a "civil matter." Dull suggested that the Webbers write a letter to Steak & Ale's corporate office or file a civil court action.

Todd Webber sent a letter to Steak and Ale's corporate headquarters, explaining his agreement with Stanley and requesting that it be honored. Both Donald and Todd Webber testified that they did not receive a response to this letter. Frederick R. Green, a regional supervisor for Steak & Ale, testified that he received Todd Webber's letter in late February 1996, and that he ordered the new oven for the restaurant only after he received the letter.

On the morning of March 11, 1996, the Webbers appeared at the restaurant, again requesting either payment for the repair work or delivery of the oven. Stanley tried unsuccessfully to reach Green by telephone. When Stanley warned the Webbers not to remove the oven, they replied that they had waited long enough to receive it. The Webbers removed the oven, loaded it onto a trailer, and took the oven to Todd Webber's garage.

Stanley telephoned Officer Dull and told him that the Webbers had taken the oven. Dull informed Stanley that she could institute a civil action against the Webbers, or that she could bring criminal charges against them. Stanley told Dull that she wanted to pursue criminal charges and she prepared a written statement in which she stated that the oven had a value of $1,500.

Officer Dull interviewed Todd Webber the same morning, retrieved the oven from him, and returned it to the restaurant. Based on Stanley's written complaint, Dull obtained arrest warrants for the Webbers on charges of grand larceny. When Dull contacted the Webbers, they agreed to meet him in front of the magistrate's office at the jail, where he served the warrants on them. The Webbers were taken into the jail, and their fingerprints and photographs were taken. After about 1½ hours, the Webbers were released from custody on personal recognizance bonds.

Later that day, Stanley telephoned the Security Equipment office and informed Donald Webber's wife that the restaurant had received its new oven and that the Webbers could take the old oven from the loading dock behind the restaurant. When the Webbers arrived to take possession of the oven, Stanley signed a receipt presented to her by Todd Webber. The receipt stated: "Received oven as payment in full on Invoice Number 27 date 6-

4

25-1995. That was to be paid in full by or around August, 1995. Seven months later transaction was completed."

About two months later, when the Webbers had retained an attorney and appeared in court for a preliminary hearing, they were told that the prosecutor intended to seek dismissal of the charges against them. Stanley testified that she and Green decided not to pursue the charges because they "wanted all of this to end." The prosecutions were terminated prior to the scheduled preliminary hearing.

At the end of the Webbers' evidence in the malicious prosecution actions, and again at the close of all the evidence, Steak & Ale and Stanley (collectively, the defendants) moved to strike the Webbers' evidence. The trial court denied both motions to strike and submitted the actions to the jury, which returned a verdict in favor of the Webbers, awarding damages to each for malicious prosecution in the amount of $15,000. The trial court denied the defendants' motion to set aside the verdict and entered judgment in accordance with the verdict.

On appeal, the defendants argue that the Webbers failed to prove that Stanley initiated the grand larceny prosecution without probable cause to believe that the crime had been committed. The defendants contend that the evidence showed that Stanley reasonably believed that the Webbers had taken an oven belonging to Steak & Ale, and that the Webbers lacked a

legitimate ownership claim to the oven because the restaurant had not yet received its replacement oven. Thus, the defendants assert that, as a matter of law, Stanley maintained a reasonable belief under the facts and circumstances that the Webbers had committed the crime of grand larceny. The defendants also argue that the Webbers actually were guilty of grand larceny, and that their guilt was a complete defense to the malicious prosecution actions.

In response, the Webbers contend that the defendants' arguments are without merit because they depend on the resolution of factual issues that were properly submitted to the jury. The Webbers assert that the jury resolved the issue of probable cause in their favor, and that the evidence supports the jury's conclusion. They also argue that since the defendants lacked probable cause to institute the criminal charges and there was no additional evidence indicating that the crime had been committed, the evidence failed as a matter of law to establish that they were guilty of grand larceny. We agree with the Webbers.

In deciding this appeal, we apply an established standard of review. When parties come before us with a jury verdict that has been approved by the trial court, they hold the most favored position known to the law. <u>Lumbermen's Underwriting Alliance v. Dave's Cabinet, Inc.</u>, 258 Va. 377, 380, 520 S.E.2d 362, 365

(1999); Smith v. Litten, 256 Va. 573, 578, 507 S.E.2d 77, 80 (1998); Evaluation Research Corp. v. Alequin, 247 Va. 143, 147, 439 S.E.2d 387, 390 (1994).  The trial court's judgment is presumed to be correct, and we will not set it aside unless the judgment is plainly wrong or without evidence to support it.  Code § 8.01-680; Lumberman's Underwriting Alliance, 258 Va. at 381, 520 S.E.2d at 365; Evaluation Research Corp., 247 Va. at 147-48, 439 S.E.2d at 390.

In an action for malicious prosecution, the plaintiff has the burden of proving by a preponderance of the evidence that the prosecution was (1) malicious; (2) instituted by, or with the cooperation of, the defendant; (3) without probable cause; and (4) terminated in a manner not unfavorable to the plaintiff.  Hudson, 255 Va. at 333, 497 S.E.2d at 473; Lee v. Southland Corp., 219 Va. 23, 26, 244 S.E.2d 756, 758 (1978); Bain v. Phillips, 217 Va. 387, 393, 228 S.E.2d 576, 581 (1976).  In the present case, the defendants contest the sufficiency of the evidence to support the jury's finding that they instituted the criminal charges without probable cause.

In the context of a malicious prosecution action, probable cause is defined as knowledge of such facts and circumstances to raise the belief in a reasonable mind, acting on those facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected.  Lee, 219 Va. at 26, 244 S.E.2d at 758-

7

59; Bain, 217 Va. at 394, 228 S.E.2d at 581; Gaut v. Pyles, 212 Va. 39, 41, 181 S.E.2d 645, 647 (1971). The determination whether a defendant had probable cause to believe that a crime was committed is judged with reference to the time the defendant took the action initiating the criminal charges. Bill Edwards Oldsmobile, Inc. v. Carey, 219 Va. 90, 98, 244 S.E.2d 767, 773 (1978); Bain, 217 Va. at 394, 228 S.E.2d at 581. When the facts relating to the question of probable cause are in dispute, the issue is one of fact to be resolved by the trier of fact. Lee, 219 Va. at 27, 244 S.E.2d at 759; Giant of Virginia, Inc. v. Pigg, 207 Va. 679, 684, 152 S.E.2d 271, 275 (1967); Brodie v. Huck, 187 Va. 485, 488, 47 S.E.2d 310, 312 (1948).

We consider the elements of the crime of grand larceny in determining whether there was sufficient evidence to support the jury's finding that the defendants lacked probable cause to initiate these charges. Larceny, a common law crime, is the wrongful or fraudulent taking of another's property without his permission and with the intent to permanently deprive him of that property. Commonwealth v. Taylor, 256 Va. 514, 518, 506 S.E.2d 312, 314 (1998); Bryant v. Commonwealth, 248 Va. 179, 183, 445 S.E.2d 667, 670 (1994). Under Code § 18.2-95, grand larceny includes a taking, not from the person of another, of goods having a value of $200 or more. Taylor, 256 Va. at 518, 506 S.E.2d at 314.

8

There can be no larceny if an accused, in good faith, believes that the property taken belongs to him, since the essential element of intent is absent in that circumstance. Id. at 519, 506 S.E.2d at 314; Pierce v. Commonwealth, 205 Va. 528, 533, 138 S.E.2d 28, 32 (1964); Butts v. Commonwealth, 145 Va. 800, 811-12, 133 S.E. 764, 767-68 (1926). Intent may, and often must, be inferred from the facts and circumstances of the case, including the actions of the accused and any statements made by him. Taylor, 256 Va. at 519, 506 S.E.2d at 314; see Guill v. Commonwealth, 255 Va. 134, 140, 495 S.E.2d 489, 492 (1998); Ridley v. Commonwealth, 219 Va. 834, 836, 252 S.E.2d 313, 314 (1979).

The evidence in the present case was disputed on the issue whether the defendants had probable cause to initiate the criminal charges against the Webbers. Todd Webber testified that he and Stanley agreed that he would provide the parts and labor to repair the oven and that, in return, Steak & Ale would allow him to take the oven as payment for his services when Stanley received her new oven in "30 days or so, whatever." Donald Webber's testimony essentially corroborated Todd Webber's statement concerning the terms of the oral agreement.

The jury could reasonably infer from this testimony that under the parties' agreement, the oven belonged to the Webbers once they repaired it, although they agreed to allow Stanley to

9

retain possession of it for a brief period thereafter. Alternatively, the jury could infer from the testimony that the parties' agreement transferred ownership of the oven to the Webbers about 30 days after they repaired it. Either conclusion also was supported by the receipt signed by Stanley, which indicated that the oven constituted payment for the June 1995 invoice, and that this payment was supposed to have been made around August 1995.

Under either of these views of the evidence, the defendants lacked probable cause to initiate the grand larceny charges because the Webbers did not intend to permanently deprive Steak & Ale of any property owned by it, and Stanley knew this fact when she initiated the criminal charges. Thus, we hold that the evidence was sufficient to support the jury's determination that the defendants initiated the criminal prosecutions against the Webbers without probable cause.

We find no merit in the defendants' additional argument that these malicious prosecution actions were barred because the Webbers actually were guilty of grand larceny. The jury was instructed that proof of the actual guilt of the person accused is a complete defense to a malicious prosecution action. See Wiggs v. Farmer, 205 Va. 149, 152, 135 S.E.2d 829, 831 (1964); Horne v. Bridwell, 193 Va. 381, 389, 68 S.E.2d 535, 540 (1952). By its verdict, the jury rejected the defendants' assertion that

the Webbers were guilty of grand larceny, and the evidence stated above supports the jury's determination on this issue. Therefore, we hold that the trial court's judgment is not plainly wrong or without evidence to support it.

For these reasons, we will affirm the trial court's judgment.

<u>Affirmed.</u>