UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ANDRE FOREMAN,
            *Plaintiff-Appellant,*

and

WILLIAM SUMMS,
                        *Plaintiff,*

v.                                              No. 02-2284

CHARLES D. GRIFFITH, JR.; BERNARD
PISHKO; CALVIN DEPEW; THE CITY OF
NORFOLK,

            *Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Robert G. Doumar, Senior District Judge.
(CA-02-380-2, CA-02-394-2)

Argued: September 26, 2003

Decided: November 17, 2003

Before WILKINS, Chief Judge, and
HAMILTON, Senior Circuit Judge.*

---

Affirmed in part, vacated in part, and remanded by unpublished per
curiam opinion.

---

*The opinion is filed by a quorum of the panel pursuant to 28 U.S.C.
§ 46(d).

**COUNSEL**

**ARGUED:** Bruce Elliott Fein, FEIN & FEIN, Washington, D.C., for Appellant. Alan Brody Rashkind, FURNISS, DAVIS, RASHKIND & SAUNDERS, P.C., Norfolk, Virginia, for Appellees Pishko and Norfolk; Michael Eugene Ornoff, ORNOFF & ARNOLD, P.C., Virginia Beach, Virginia, for Appellees Griffith and Depew. **ON BRIEF:** Gilbert K. Davis, DAVIS & STANLEY, L.L.C., Fairfax, Virginia, for Appellant. James A. Cales, III, FURNISS, DAVIS, RASHKIND & SAUNDERS, P.C., Norfolk, Virginia, for Appellees Pishko and Norfolk.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

Andre Foreman (Foreman) appeals the district court's dismissal of his § 1983 claims alleging deprivation of liberty and property interests without due process of law in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. U.S. Const. amend. XIV; 42 U.S.C. § 1983. He also appeals the district court's dismissal of his state law defamation claim. We affirm in part, vacate in part, and remand for further proceedings.

I.

Foreman is a deputy attorney for the City of Norfolk, Virginia (the City). He filed the present action after he was demoted to a lesser position in the City Attorney's Office following the release of an investigative report (the Report) prepared by Charles Griffith, the Virginia Commonwealth's Attorney for the City of Norfolk. In the Report, Griffith concluded that Foreman had acted improperly, although not criminally, in negotiating a towing contract on behalf of

the City with Tidewater Towing, Inc. Bernard Pishko was Foreman's boss at the City Attorney's Office, and the person who demoted him.

Griffith released the Report to print and broadcast media, which media outlets in turn quoted portions of the Report that Foreman claims are defamatory. The primary accusation against Foreman in the Report was that he engaged in unethical favoritism of Tidewater Towing, Inc. at the City's expense and to enrich himself. Foreman alleges that the accusation is false and damaged his professional reputation.

At issue in the present appeal are the following three claims by Foreman:

(1) a property interest claim, based upon Foreman's particular position in the City Attorney's Office, against Pishko and the City, alleging the failure to provide him a name-clearing hearing prior to his demotion violated the Due Process Clause of the Fourteenth Amendment;

(2) a liberty interest claim against Pishko and the City, alleging harm to Foreman's professional reputation, because Pishko and the City failed to provide him a name-clearing hearing prior to releasing the Report and demoting him, in violation of the Due Process Clause of the Fourteenth Amendment; and

(3) a defamation claim under Virginia common law against Griffith, without specifying capacity, individual or official.

Foreman originally filed this action in state court. Specifically, he filed a complaint and an amended complaint, respectively entitled motion for judgment and amended motion for judgment. The action was subsequently removed to the United States District Court for the Eastern District of Virginia. Griffith, Pishko, and the City (collectively the Defendants) moved to dismiss the entire action pursuant to Federal Rule of Civil Procedure 12(b)(6), and Griffith filed a separate motion for a more definite statement pursuant to Federal Rule of Civil

Procedure 12(e). The district court granted the motion for a more definite statement, and Foreman complied.[1]

The Defendants then renewed their Rule 12(b)(6) motions, which the district court granted. Foreman noted this timely appeal.

## II.

We review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6). *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). "[A] Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

## III.

Foreman first contends that the district court committed reversible error by dismissing his Virginia state law defamation claim against Griffith. We agree.

Relying exclusively on Eighth Circuit precedent, *see Egerdahl v. Hibbing Community College*, 72 F.3d 615, 619 (8th Cir. 1995); and *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989), the district court dismissed Foreman's defamation claim on the basis that, because the Complaint failed to expressly state that Griffith was being sued in his individual capacity, the Eleventh Amendment to the United States Constitution barred his claim. U.S. Const. amend. XI. The Eleventh Amendment to the United States Constitution provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." *Id.* While "the text of the Amendment would appear

---

[1]From here forward, we will refer to the complaint, amended complaint, and more definite statement collectively as "the Complaint."

to restrict only the Article III diversity jurisdiction of the federal courts," *Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996), the Supreme Court has long "'understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition . . . which it confirms,'" *id.* (quoting *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 779 (1991)). That presupposition is "that an unconsenting State is immune from suits brought in federal courts by its own citizens as well as by citizens of another State," *Edelman v. Jordan*, 415 U.S. 651, 663 (1974), "unless [it] consent[s] to [such suits] in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity," *Green v. Mansour*, 474 U.S. 64, 68 (1985). Notably, the Supreme Court has made clear that the "Eleventh Amendment bars a suit against state officials when the state is the real, substantial party in interest." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (internal quotation marks omitted).

The Eighth Circuit cases relied upon by the district court stand for the proposition that if a plaintiff's complaint is silent about the capacity in which he has sued a state actor, the court should interpret the complaint as including only official capacity claims. *Egerdahl*, 72 F.3d at 619; *Nix*, 879 F.2d at 431.

In *Biggs v. Meadows*, 66 F.3d 56 (4th Cir. 1995), the Fourth Circuit expressly rejected the Eighth Circuit's mechanical approach to determining the capacity (official versus individual) in which a plaintiff has sued a state actor in favor of a more flexible approach that looks to the nature of the plaintiff's claim or claims, the relief sought, and the course of proceedings. *Id.* at 59-60. With respect to assessing the nature of a plaintiff's claim or claims, the *Biggs* court stated that the plaintiff's failure to allege that the defendant acted in accordance with a governmental policy or custom or the lack of indicia of such a policy or custom on the face of the complaint indicates that a state actor has been sued in his individual capacity. *Id.* at 61. With respect to the nature of the relief sought, the *Biggs* court also stated that the plaintiff's request for compensatory or punitive damages indicates an individual capacity suit since such relief is unavailable in official capacity suits. *Id.* Finally, with respect to the course of proceedings, the *Biggs* court stated that the defendant's assertion of qualified immunity as a

defense indicates an individual capacity suit, since such a defense is only available in individual capacity suits. *Id.*

In resolving the question of whether Foreman sued Griffith for defamation in his individual or his official capacity, the district court erred in applying the Eighth Circuit's mechanical approach.[2] The district court should have applied the more flexible approach set forth in *Biggs*.[3] Our own application of the *Biggs* approach to the Complaint leads to the inescapable conclusion that Foreman sued Griffith for defamation in his individual capacity.

The nature of Foreman's defamation claim suggests that Foreman sued Griffith in his individual capacity. Under Virginia law, defamation is an intentional tort for which government officials do not enjoy sovereign immunity, irrespective of whether they acted within or without the scope of their employment. *Fox v. Deese*, 362 S.E.2d 699, 705-06 (Va. 1987); *Elder v. Holland*, 155 S.E.2d 369, 372-73 (Va. 1967). Additionally, the Complaint does not allege that Griffith, in allegedly defaming Foreman, acted in accordance with a governmental policy or custom.

The nature of the relief sought by Foreman with respect to his defamation claim, compensatory and punitive damages, suggests that Foreman sued Griffith in his individual capacity. Finally, Griffith's assertion of qualified immunity, a defense only asserted in individual capacity suits, suggests that Foreman sued Griffith in his individual capacity.

---

[2]Griffith argues that, because Foreman failed to make a motion to alter or amend the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, he should be barred from challenging the district court's dismissal of his defamation claim. Griffith's argument is without merit. Foreman is entitled to challenge the district court's Rule 12(b)(6) dismissal of his defamation claim on appeal without having first made a Rule 59(e) motion below.

[3]We observe that *Biggs* involved federal claims brought pursuant to 42 U.S.C. § 1983 as opposed to a state law claim such is at issue here. This distinction is of no moment given that the Eleventh Amendment applies to bar law suits against states in federal court regardless of the federal or state law nature of the underlying claims in such law suits.

In sum, we hold that the district court erred in dismissing Foreman's defamation claim at the pleading stage.[4]

IV.

Foreman next argues that the district court erred in dismissing his claim alleging that Pishko and the City deprived him of his alleged property interest in his particular position at the City Attorney's Office in violation of the Due Process Clause of the Fourteenth Amendment. In the Complaint, Foreman alleges that the Due Process Clause required that he be afforded a name-clearing hearing prior to being demoted, which he did not receive.

Foreman's challenge to the district court's dismissal of his property interest claim is without merit. Whether a plaintiff has a protectable property interest under the Due Process Clause turns upon the plaintiff's property rights under state law. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). The district court dismissed Foreman's property interest claim on the basis that, under Virginia law, "Foreman was an at-will employee who had no constitutionally protected property interest in his continued employment as such." (J.A. 396). We agree.

---

[4]Griffith offers three alternative grounds for affirmance not addressed by the district court. First, Griffith argues the Complaint fails to allege actual malice as required by *New York Times v. Sullivan*, 376 U.S. 254 (1964), when the alleged victim of defamation is a public figure. Second, Griffith claims a qualified privilege under Virginia law. *Larimore v. Blaylock*, 528 S.E.2d 119 (Va. 2000) (collecting cases where court applied doctrine of qualified privilege in cases involving defamatory statements made between co-employees and employers in the course of employee disciplinary or discharge matters). Finally, Griffith argues that Foreman has not alleged any statements that are actually defamatory.

We reject each of these arguments. Accepting the allegations in the Complaint as true and viewing them in the light most favorable to Foreman reveals that: (1) Foreman has sufficiently alleged actual malice as required by *New York Times v. Sullivan*; (2) the same allegation disqualifies Griffith from entitlement to a qualified privilege, *Southeastern Tidewater Opportunity Project v. Bade*, 435 S.E.2d 131, 132-33 (Va. 1993); and (3) the Complaint sufficiently alleges defamatory statements.

In the Complaint, Foreman initially concedes that he "was an at-will employee" of the City Attorney's Office. (J.A. 335). By this statement, Foreman appears to acknowledge that Norfolk City Charter § 53 provides that Norfolk City Attorneys are at-will employees, nominated by the City Attorney and appointed by the City Counsel. Norfolk City Charter § 53. Section 53 of the Norfolk City Charter is squarely in accord with Virginia's strong adherence to the common law employment-at-will doctrine. *Bailey v. Scott-Gallagher, Inc.*, 480 S.E.2d 502, 503 (Va. 1997).

However, Foreman attempts to nullify the effect of Norfolk City Charter § 53 by also alleging that:

> the longstanding custom of [the City Attorney's Office] was to terminate or discipline or demote only for just cause. That was the case during Foreman's approximately 17 years of legal service in the City Attorney's office. Foreman recalls no case in which any lawyer-employee was ever terminated, disciplined, or demoted without cause. That understanding was the "common law" of the workplace, and was communicated to Foreman directly and personally by Pishko, the City Attorney, on more than three occasions. It was also communicated to Foreman and others on numerous occasions by Pishko's predecessor, Phil Trapani.

(J.A. 335-336).

Foreman is correct that a common law of a particular institution developed by circumstances of the employee's service can create a property interest protected by the Due Process Clause of the Fourteenth Amendment. *Perry v. Sindermann*, 408 U.S. 593, 602 (1972) (finding that a "common law" of a particular institution developed by circumstances of the employee's service can also create a property interest). We find the decision of *County of Giles v. Wines*, 546 S.E.2d 721 (Va. 2001), dispositive in that circumstances of the nature alleged by Foreman do not create a common law of the workplace to discharge only for cause in the face of the strong presumption under Virginia common law that an employment relationship in Virginia is at-will.

In *County of Giles*, D. Chad Wines (Wines) sued Giles County, Virginia and its Board of Supervisors following his termination as a County employee without any pre or post termination hearing procedures. *Id.* at 722. Like Foreman, Wines asserted a property interest claim under the Due Process Clause of the Fourteenth Amendment. *Id.* Specifically, Wines alleged that the County and the Board of Supervisors had violated the Due Process Clause of the Fourteenth Amendment by depriving him of his property interest in continued employment with the County, subject to termination only for cause, without providing him name clearing procedures.[5] *Id.* In support of his claimed property interest in continued employment with the County, Wines relied upon the County's Personnel Policy, enacted by its Board of Supervisors. In relevant part, the County's Personnel Policy provided:

8-5 Discharges

An employee may be discharged for inefficiency, insubordination, misconduct, or other just cause. Discharge may be made by the Department Head with approval of the County Administrator in the case of employees below department head level. The County Administrator with the approval of the Board of Supervisors may discharge other employees. A written statement of the reasons for such action shall be furnished the employee and a copy shall be made part of the personnel file of the individual.

*Id.* at 722. Additionally, § 8-7 of the County's Personnel Policy enumerated "Causes for Suspension, Demotion, or Dismissal." *County of Giles*, 546 S.E.2d at 723. The jury returned a verdict in favor of Wines. *Id.* at 722.

At the conclusion of Wines' evidence and at the conclusion of all the evidence, the County and the Board of Supervisors made motions to strike Wines' evidence on the basis that Wines was an employee terminable at-will and, therefore, the County was not limited to terminating him solely for cause nor required to provide him with proce-

---

[5]According to Wines, personality conflicts with the County's Board of Supervisors, rather than any fault on his part, resulted in his termination.

dural due process in connection with terminating him. *Id.* at 722. The trial court denied all such motions based upon its holding that the County Personnel Policy created an employment contract under which the County could only discharge Wines for cause. *Id.* Thus, the trial court entered an order confirming the jury's verdict in favor of Wines. *Id.* The County and the Board of Supervisors appealed.

On appeal, the County and the Board of Supervisors denied that Wines had a constitutionally protected property interest in his employment position with the County. *Id.* at 724-25. According to the County, under Virginia common law Wines' employment with the County was presumed to be terminable at-will, and the evidence presented at trial was insufficient to rebut the presumption. *Id.* at 723-25. Wines, on the other hand, argued that §§ 8-5 and 8-7 of the County's Personnel Policy created an employment contract guaranteeing him the right to be terminated solely for cause, and that such right translated to afford him a constitutionally protected property interest. *Giles*, 546 S.E.2d at 725.

The Supreme Court of Virginia unequivocally held in favor of the County and the Board of Supervisors. *Id.* at 725. In so doing, the court reiterated the rule that Virginia strongly adheres to the common law employment-at-will doctrine. *Id.* at 723, 725. Under that doctrine, there is a strong rebuttable presumption that an employment relationship is at-will for an indefinite period of time, with either party free to terminate the relationship at any time and for any reason. *Id.* at 723. The court applied this doctrine to the evidence before it and held: "Wines failed to present evidence that he had an employment contract terminable solely for cause sufficient to rebut the employment at-will presumption." *Id.* According to the court:

> Section 8-5 of the County's Personnel Policy does not change the nature of Wines' employment at-will contract with the County. The language upon which Wines relies states that an "employee *may* be discharged for inefficiency, insubordination, misconduct, or other just cause." This sentence does not state that an employee *shall only* be discharged for inefficiency, insubordination, misconduct, or other just cause; nor does it state that an employee will not be discharged without just cause. We hold that the personnel

> policy at issue in this case is not sufficient to rebut the strong presumption in favor of the at-will employment relationship in this Commonwealth.
>
> We note that Wines also relies upon § 8-7 of the County's Personnel Policy which enumerates "Causes for Suspension, Demotion, or Dismissal." However, this section is devoid of any language which changes the nature of the at-will employment relationship between the County and its employees. There is simply no language in this section that limits the County's power to discharge an employee without cause.

*Id.* The court also held that the County's interim administrator's mistaken belief that Wines could only be discharged for cause was insufficient to change Wines' at-will employment relationship with the County. *Id.* Because Wines failed to establish that he was an employee terminable solely for cause, he had no property right protected by the Fourteenth Amendment. *Id.* at 725. Accordingly, the court reversed the judgment of the trial court with respect to Wines' property interest claim and entered final judgment in favor of the County and the Board of Supervisors. *Id.*

The facts of the present case, taken in the light most favorable to Foreman, are even less compelling than the facts in *Giles*. *Giles* involved written language in a formal personnel policy, which written language at least arguably gave employees the impression that terminations and demotions would only be for cause. No such comparable evidence exists in the present case. Indeed, the only officially issued written directive on the subject, Norfolk City Charter § 53, clearly provides that attorneys in the City Attorney's Office are employees at-will, with no guarantee of continued employment or of a particular rank. The arguable longstanding custom of the City Attorney's Office not to terminate or demote attorneys except for cause coupled with the multiple verbal assurances of similar effect by Pishko and his predecessor are simply insufficient to vitiate the combined force of this express language and the strong presumption of an at-will employment relationship under Virginia law.

In sum, we hold Foreman did not have a property interest in his continued employment nor his particular rank at the City Attorney's

Office. Accordingly, he cannot sustain his property interest claim under the Due Process Clause. We, therefore, affirm the district court's Rule 12(b)(6) dismissal of such claim.

V.

Foreman challenges the district court's dismissal of his liberty interest claim alleging that Pishko and the City deprived him of his liberty interest in his professional reputation and future employment opportunities in violation of the Due Process Clause of the Fourteenth Amendment. According to Foreman, the violation occurred when Pishko and the City failed to give him a name-clearing hearing prior to making the Report public and demoting him for reasons contained in the Report. Foreman's liberty interest claim is foreclosed by our decision in *Johnson v. Morris*, 903 F.2d 996, 999 (4th Cir. 1990). Accordingly, we affirm the district court's dismissal of this claim.

In *Johnson*, the plaintiff, a public employee who had been demoted and transferred for alleged misconduct on the job, alleged that his employer's public announcement of the reasons for his demotion without notice and an opportunity to be heard prior to the demotion deprived him of his liberty interests in his reputation and future career opportunities in violation of the Due Process Clause. *Id.* at 998. Following a bench trial, the district court entered judgment in favor of the plaintiff. *Id.*

On appeal, we reversed on the ground that no protectable liberty interest was implicated by the public announcement of the reasons for the plaintiff's demotion. *Id.* at 1000. In this regard, we held that "for a liberty interest to have been implicated, some damage to [the plaintiff's] employment status must have resulted from publication of the reasons for his demotion." *Id.* at 999. Because the plaintiff remained employed by his public employer, we concluded that he suffered no damage to his employment status, and thus, could not be heard to complain that he had been made unemployable as the result of the publication. *Id.* We also concluded that any harm to the plaintiff's chances for career advancement with his public employer did not result from the publication of the reasons for his demotion, but from the reasons for the demotion itself. *Id.* at 999-1000.

In the present case, like the plaintiff in *Johnson*, Foreman remained employed by his public employer after the public announcement of the reasons for his demotion. Accordingly, he suffered no damage to his employment status and cannot be heard to complain that he has been made unemployable. Furthermore, any harm that came to Foreman's chances for career advancement with the City Attorney's Office did not result from the publication of the actual reasons for his demotion, but from the actual reasons themselves. In short, even accepting all of the facts in Foreman's complaint as true, Foreman cannot establish that he has been deprived of a liberty interest protected by the Due Process Clause, and therefore, we affirm the district court's dismissal of Foreman's liberty interest claim against Pishko and the City.[6]

## VI.

In conclusion, we: (1) vacate the district court's dismissal of Foreman's defamation claim against Griffith and remand that claim for further proceedings; (2) affirm the district court's dismissal of Foreman's property interest claim; and (3) affirm the district court's dismissal of Foreman's liberty interest claim.

*AFFIRMED IN PART, VACATED*
*IN PART, AND REMANDED*

---

[6]In support of his liberty interest claim, Foreman makes mention of the following statement in a footnote in *Stone v. University of Maryland Medical System Corp.*, 855 F.2d 167 (4th Cir. 1988): "[A] public employer's stigmatizing remarks do not deprive an employee of a liberty interest unless they are made in the course of a discharge or significant demotion." *Id.* at 172 n.5. Any reliance that Foreman places on this statement in support of his liberty interest claim is misplaced. The statement is not only nonbinding *dicta*, but also pre-*Johnson*, which squarely rejected the idea that a mere demotion can sustain a liberty interest claim.